Filed 12/4/24  P. v. Bennett CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F086760 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. VCF230530) |
| JOHNNIE ALBERT BENNETT, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

In 2010, a jury convicted defendant Johnnie Albert Bennett of first degree murder (Pen. Code, § 187) and the trial court sentenced defendant to 25 years to life.

(Undesignated statutory references are to the Penal Code.)  At trial, the jury was instructed on first degree murder based on two theories:  premeditation and deliberation and lying in wait.  In November 2019, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6), which the trial court denied days later.  Our court reversed the trial court's order and remanded for further proceedings.  The court then held a hearing on remand at which it again denied defendant's petition without issuing an order to show cause on the grounds the jury was not instructed on felony murder or the natural and probable consequences doctrine.

On appeal, defendant contends the court erred in denying his petition at the prima facie stage, arguing the jury instructions on aiding and abetting, implied malice, and lying-in-wait murder allowed for the jury to convict him of murder under a theory by which malice was imputed to him based solely on his participation in the crime, relying on *People v. Maldonado* (2023) 87 Cal.App.5th 1257.  The People disagree and assert the record of conviction conclusively establishes the jury was not instructed on any of the theories of liability that were abrogated by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437).

We affirm the court's order.

## FACTUAL AND PROCEDURAL HISTORY

In 2010, a jury convicted defendant of first degree murder (§ 187; count 1) and he was sentenced to 25 years to life in prison.  Our court affirmed defendant's conviction in an unpublished opinion.  (See *People v. Bennett* (Aug. 9, 2011, F060576) [nonpub. opn.].)

In November 2019, defendant submitted a petition for resentencing pursuant to former section 1170.95 (now § 1172.6) using a preprinted form.  He checked boxes stating a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a

2.

felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437). He also checked a box indicating he was convicted of first degree murder but could not now be convicted because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree, and he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. He requested that counsel be appointed for him during the resentencing process.

Three days after defendant filed his petition, and before any response was filed by the People, the court signed an order denying the petition, concluding the "facts of the crime do not qualify for the requested relief. He was a major participant." Defendant appealed from the court's order and we previously reversed the court's order and remanded for further proceedings.

Thereafter, the trial court held another prima facie review hearing on October 22, 2021, at which it again denied defendant's petition, concluding section 1172.6 was inapplicable to his case. At the hearing, the People argued the jury instructions made clear "the only theories of liability were premeditation, aiding and abetting, and lying in wait. There was no natural and probable consequence argument and no felony murder, so [Senate Bill] 1437 was inapplicable." Accordingly, counsel for the People stated he did not "see any grounds where [section 1172.6] applies" and he believed defense counsel was "in agreement." Defense counsel agreed that "any error in the argument" was "harmless based on the instructions." In denying the petition, the trial court noted it would include in the record the jury instructions and transcript of final arguments, noting "contained therein is nothing that falls within the [section 1172.6] legislation."

Defendant timely appealed the court's denial of his petition for resentencing.

3.

## DISCUSSION

**I.     Jury Instructions**

Here, the court instructed the jury on both express and implied malice pursuant to CALCRIM No. 520:

> "The defendant is charged with murder.

> "To prove that the defendant is guilty of this crime, the People must prove that:

> "1.  The defendant committed an act that caused the death of another person;

> "AND

> "2.  When the defendant acted, he had a state of mind called malice aforethought.

> "There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.

> "The defendant acted with *express malice* if he unlawfully intended to kill.

> "The defendant acted with *implied malice* if:

> "1.  He intentionally committed an act;

> "2.  The natural and probable consequences of the act were dangerous to human life;

> "3.  At the time he acted, he knew his act was dangerous to human life;

> "AND

> "4.  He deliberately acted with conscious disregard for human life.

> "Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before the act that causes death is committed.  It does not require deliberation or the passage of any particular period of time."

4.

The jurors were also instructed on the different degrees of murder pursuant to CALCRIM No. 521, which told them defendant was being prosecuted for first degree murder under two theories: (1) the murder was willful, deliberate, and premeditated; and (2) the murder was committed while lying in wait. Specifically, the jury was instructed regarding murder while lying in wait:

> "The defendant may also be guilty of first degree murder if the People have proved that the defendant murdered while lying in wait or immediately thereafter. The defendant murdered by lying in wait if:

> "1. He concealed his purpose from the person killed;

> "2. He waited and watched for an opportunity to act;

> "AND

> "3. Then, from a position of advantage, he intended to and did make a surprise attack on the person killed.

> "The lying in wait does not need to continue for any particular period of time, but its duration must be substantial enough to show a state of mind equivalent to deliberation or premeditation.

> "A person can conceal his or her purpose even if the person killed is aware of the person's physical presence.

> "The concealment can be accomplished by ambush or some other secret plan."

The jury was instructed on aiding and abetting general principles pursuant to a former version of CALCRIM No. 400:

> "A person may be guilty of a crime in two ways, One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

The jury was also instructed on aiding and abetting principles pursuant to CALCRIM No. 401 as follows:

5.

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1. The perpetrator committed the crime;

"2. The defendant knew that the perpetrator intended to commit the crime;

"3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

"AND

"4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.

"If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

## II.  Senate Bill 1437 and Senate Bill No. 775

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019.  Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  It amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability, and it added section 1170.95, now section 1172.6, which

provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, §§ 2–4.)

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*." (§ 188, subd. (a)(3), italics added.) The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Senate Bill 1437 amended section 189, in part, by adding subdivision (e) which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1172.6, which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, section 1172.6 (former § 1170.95) permitted those "convicted of felony murder

or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).)

In Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, the Legislature amended the language of this section to expand the scope of the petitioning procedure, in part, by expressly permitting persons convicted of attempted murder under the natural and probable consequences doctrine to petition for relief. (Stats. 2021, ch. 551, § 2.) Under the amended statute, an offender may file a petition under section 1172.6 where all three of the following conditions are met:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

Upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1172.6, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People*

*v. Lewis* (2021) 11 Cal.5th 952, 971.) At the prima facie inquiry stage, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" (*Ibid*.) "'However, if the record, including the court's own documents "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid*.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972.)

"If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) Within 60 days after the order to show cause has issued, the trial court must then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).)

## III.    Applicable Law

In *People v. Powell* (2021) 63 Cal.App.5th 689, the Third District Court of Appeal considered a claim of instructional error on direct appeal. (*Id*. at pp. 709–710.) The *Powell* court concluded the aiding and abetting instructions (CALCRIM No. 401) given to the jury in that case were not accurately tailored for second degree implied malice murder. (*Powell*, at p. 714.) *Powell* observed, "[t]he mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*Id*. at p. 713.) While CALCRIM No. 401 requires an intent to aid and abet "the crime," it

9.

does not instruct the jury that the aider and abettor must personally harbor the mental state of implied malice to be convicted of second degree murder. (See *Powell*, at p. 714.) Accordingly, the *Powell* court concluded the given instructions were erroneous. (*Ibid*.) However, the *Powell* court concluded the instructional error was harmless because the prosecutor did not rely upon or argue an implied malice theory as to the defendant challenging the instruction. (*Id.* at pp. 714–715.)

Thereafter, in *People v. Langi* (2022) 73 Cal.App.5th 972, the First District Court of Appeal, Division Four, extended *Powell*'s holding to conclude the appellant was not categorically ineligible for section 1172.6 relief where there was a similar alleged ambiguity in the aiding and abetting instructions. (*Langi*, *supra*, at pp. 982, 983.) The *Langi* court explained, "The [given] aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts '*with knowledge of the unlawful purpose of the perpetrator*, and … with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01, italics added.) However, … the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass the victim." (*Langi*, at p. 982.) Thus, "[s]ince the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Ibid*.) That is, "[i]f the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Id.* at pp. 982–983.) The *Langi* court reasoned, "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, appellant need only have intended to encourage the perpetrator's intentional act—in this case punching [the victim]—whether or not appellant intended to aid or

10.

encourage [the victim]'s killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id.* at p. 983.) *Langi* held, in light of these instructions, the record of conviction did not conclusively negate the possibility the jury convicted the appellant of second degree murder by imputing to him the implied malice of the actual killer, without finding that he personally acted "'"with knowledge of the danger to, and with conscious disregard for, human life."'" (*Id.* at p. 984.)

More relevant here, in *People v. Maldonado*, *supra*, 87 Cal.App.5th 1257 (*Maldonado*), the defendant was convicted of first degree murder in 2013; the jury found a lying-in-wait special-circumstance allegation not true. (*Id.* at p. 1260.) Notably, the jury was not instructed on the natural and probable consequences or felony-murder doctrines. (*Ibid.*) The defendant filed a section 1172.6 petition for resentencing in 2020, which the trial court summarily denied, concluding the record conclusively proved the defendant was not convicted under a felony-murder or natural and probable consequences theory. (*Ibid.*) The *Maldonado* court reversed the court's order, concluding the instructions for aiding and abetting a lying-in-wait murder permitted the jury to convict the defendant of murder based on a theory under which malice was imputed to him based solely on his participation in the crime. (*Id.* at pp. 1266–1267, 1269.) The *Maldonado* court relied on *People v. Langi*, *supra*, 73 Cal.App.5th 983 to conclude the jury could have construed the instructions such that to be guilty as an aider and abettor of lying-in-wait first degree murder, the appellant only needed to have intended to encourage the perpetrator's intentional act—in that case, a surprise attack on the victim—whether or not the appellant intended to aid or encourage the victim's killing and whether or not he personally knew of and disregarded the risk of a such a killing. (*Maldonado*, at p. 1266.) Accordingly, the jury "could have reasonably construed the instructions in a manner permitting it to convict appellant under a theory of imputed malice." (*Id.* at p. 1267.)

However, in *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921 (*Berry-Vierwinden*), the Fourth District Court of Appeal, Division One, disagreed with

11.

*Maldonado*, concluding it failed to consider section 1172.6, subdivision (a)(3) in its analysis. (*Berry-Vierwinden*, at p. 933.) The defendant in *Berry-Vierwinden* was convicted of murder based on a theory of lying in wait. (*Id*. at p. 926.) He conceded he was not tried under the felony-murder or natural and probable consequences doctrine. (*Id.* at p. 932.) As in *Maldonado*, the defendant petitioned for relief from his conviction pursuant to section 1172.6, arguing the instructions given at his trial permitted the jury to convict him of aiding and abetting a lying-in-wait murder by imputing malice to him based solely on his participation in a crime. (*Berry-Vierwinden*, at pp. 932–933.) Drawing from its recent decisions in *People v. Burns* (2023) 95 Cal.App.5th 862 and *People v. Flores* (2023) 96 Cal.App.5th 1164, the *Berry-Vierwinden* court concluded the trial court correctly denied relief at the prima facie stage because the defendant's claim of instructional error failed to establish he "'could not presently be convicted of murder or attempted murder *because of changes* to Section 188 or 189 made effective January 1, 2019'" by Senate Bill 1437 (§ 1172.6, subd. (a)(3)).[1] (*Berry-Vierwinden*, at p. 925; see *id.* at pp. 934–936.) The court explained,

---

[1] In *People v. Burns*, *supra*, 95 Cal.App.5th 862, the appellate court affirmed the denial of a section 1172.6 petition at the prima facie stage. (*Burns*, at p. 866.) The defendant in *Burns* argued the language in the former version of CALCRIM No. 400 that told jurors "'[a] person is *equally* guilty of the crime whether he or she committed the crime personally or aided and abetted the perpetrator who committed it'" (*Burns*, at p. 864), "created in effect, an 'other theory' of imputed malice within the meaning of section 1172.6." (*Ibid*.) The *Burns* court rejected this contention, reasoning "[t]he problem with the 'equally guilty' language in former version CALCRIM No. 400 was not that it permitted the jury to rely on a *now*-invalid theory of criminal liability, but that it may have misled the jury as to what was *then* required to convict Burns. Use of the 'equally guilty' language in the instruction provided at Burns's trial created a potential issue of instructional error, but it did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes." (*Id*. at pp. 868–869.) The *Burns* court concluded, because the defendant did not establish he "'could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019*,' (§ 1172.6, subd. (a)(3), italics added[]),'" he was not entitled to relief. (*Burns*, at pp. 867, 869.)

In *People v. Flores, supra*, 96 Cal.App.5th 1164, years after the defendant was convicted of provocative act murder, he petitioned for relief from his murder conviction under section

12.

"[T]he instructional errors Berry-Vierwinden asserts have nothing to do with these 2019 legislative changes. What he is really arguing is that the instructions 'may have misled the jury as to what was *then* required to convict [him].' [Citation.] By the time of his trial in 2010, California law was already clear that a direct aider and abettor could not be convicted of lying-in-wait murder on an imputed malice theory. Specifically, the Supreme Court had ruled that: (1) the perpetrator of first degree murder by means of lying in wait must act with malice aforethought (*People v. Dillon* (1983) 33 Cal.3d 441, 465 (plur. opn.); *People v. Mattison* (1971) 4 Cal.3d 177, 182; and (2) a direct aider and abettor of murder must at a minimum 'know and share the murderous intent of the actual perpetrator.' (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 ….)" (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 935.)

That is, "[a]fter the Supreme Court's 2001 decision in *McCoy*, it was unmistakable that a direct aider and abettor's 'mental state is her own; she is liable for her mens rea, not the other person's.' (*McCoy*, *supra*, 25 Cal.4th at p. 1118.)" (*Berry-Vierwinden*, at p. 935.) Accordingly, "[b]y arguing that the jury instructions allowed the jury to convict him as a direct aider and abettor of murder on an imputed malice theory, Berry-Vierwinden is necessarily asserting that they were erroneous under the law in effect at the time of his 2010 trial and subsequent direct appeal." (*Id*. at p. 936.) However, he is not eligible for relief under section 1172.6 if "the jury instructions permitted conviction on a theory of imputed malice that was *already* prohibited even *before* the enactment of Senate Bill No. 1437." (*Berry-Vierwinden*, at p. 936.) Rather, the defendant's claim amounted to "'a routine claim of instructional error'" that could have been raised on appeal from his

---

1172.6. (*Flores*, at p. 1170.) He argued CALCRIM No. 561 allowed the jury to convict him of murder based on a now-invalid theory of imputed malice, namely, that he aided and abetted his codefendant's provocative act without himself acting with malice. (*Id*. at pp. 1170.) The *Flores* court rejected this argument, concluding it had "nothing to do with the changes to the law of murder that authorize convicted murderers to seek relief under section 1172.6." (*Id*. at p. 1173.) It reasoned, when the defendant was convicted in 2010, "a provocative act murder conviction required the defendant personally harbor malice, whether it was the defendant or an accomplice who committed the provocative act that caused the death." (*Ibid.*) And, "[t]hat requirement is fully consistent with the 2019 amendments to section 188…." (*Ibid.*) So, the defendant could not show he "'could not presently by convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019.'" (*Ibid.*)

13.

conviction and was not cognizable in a section 1172.6 proceeding. (*Berry-Vierwinden*, at p. 936.)

## IV.   Analysis

Although his jury was not instructed on felony murder or the natural and probable consequences doctrine, defendant argues "the given jury instructions nevertheless allowed the jury to impute malice to [him] based solely on his participation in a crime." Defendant contends his case is indistinguishable from *People v. Maldonado*, *supra*, 87 Cal.App.5th 1257, in which the court concluded the instructions permitted the jury to convict the defendant of murder under a theory of imputed malice. He acknowledges in *Berry-Vierwinden*, *supra*, 97 Cal.App.5th 921, the court disagreed with *Maldonado*, but he argues *Berry-Vierwinden* was wrongly decided and should not be followed. He contends his contention is further supported by the instruction that "'[a] person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it.'" We agree with the court's analysis in *Berry-Vierwinden*, conclude the record here establishes defendant is categorically ineligible for relief, and, accordingly, reject defendant's contention.

Here, defendant cannot establish he could not presently be convicted of murder "because of" the "changes" made to sections 188 and 189 by Senate Bill 1437. As the *Berry-Vierwinden* court observed, in *People v. McCoy*, *supra*, 25 Cal.4th 1111, the California Supreme Court made clear that "when guilt does not depend on the natural and probable consequences doctrine, … the aider and abettor must know and share the murderous intent of the actual perpetrator." (*McCoy*, at p. 1118; see *Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 935.) In 2001, the *McCoy* court explained "an aider and abettor's guilt" was "based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*McCoy*, at p. 1117.) Thus, it was well-established at the time of defendant's trial in 2010 that, where the jury was not instructed

14.

under the natural and probable consequences doctrine, a direct aider and abettor must personally possess malice to be convicted of murder. Similarly, before defendant's trial in this matter, cases had issued criticizing the language in the standard jury instruction on aiding and abetting liability (former CALCRIM No. 400), which told jurors "'[a] person is *equally* guilty of the crime, whether he or she committed the crime personally or aided and abetted the perpetrator who committed it.' (Italics added.) These opinions warned that the 'equally guilty' language of the instruction might mislead jurors in some circumstances by suggesting that once they decide the direct perpetrator is guilty of a particular crime (e.g., first degree murder), the aider and abettor is necessarily guilty of the same crime, regardless of his or her mental state." (*People v. Burns*, *supra*, 95 Cal.App.5th at p. 864, fn. omitted, citing *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165 and *People v. Nero* (2010) 181 Cal.App.4th 504, 517–518.)

Accordingly, defendant is essentially arguing the jury instructions were erroneous at the time of trial in that they allowed the jury to convict him of murder as a direct aider and abettor under a theory of imputed malice. (See *People v. Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 936.) But the alleged errors in the jury instructions have nothing to do with the legislative changes enacted by Senate Bill 1437. (*Ibid*.) And "[s]ection 1172.6 does not create a right to a second appeal." (*People v. Burns*, *supra*, 95 Cal.App.5th at p. 865.) That is, defendant cannot use the section 1172.6 petitioning process "to resurrect a claim that should have been raised in his … direct appeal." (*Ibid*.)

In his reply brief, defendant contends that at the time of his trial, it was "unclear whether the deficiency in the given jury instructions at issue would've risen to the level of being an arguable issue that could've been raised under the pre-Senate Bill 1437 law." In support, he argues *People v. Powell*, *supra*, 63 Cal.App.5th 689 and *People v. Reyes* (2023) 14 Cal.5th 981, 991 establish there was a dearth of case law addressing whether it was possible to directly aid and abet an implied malice murder at the time of his trial. This argument is misplaced. It fails to address how the legislative changes implemented

by Senate Bill 1437 establish defendant was convicted of murder under a now-invalid theory of liability. This is not a situation such as that addressed in *People v. Strong* (2022) 13 Cal.5th 698, in which there was a "significant change" in the law that supplied a basis for reexamining a prior finding. (*Id.* at p. 717.) Rather, as discussed, it was established at the time of defendant's trial that an individual convicted as an aider and abettor to murder must personally possess the requisite mental state. (See *People v. McCoy*, *supra*, 25 Cal.4th at p. 1118.) Thus, even if the instructions were potentially ambiguous (a claim that could have been raised on direct appeal), nothing about the alleged ambiguity alters the fact defendant was found guilty of murder under a theory that remains valid. Accordingly, he fails to establish he "could not presently be convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

Consequently, because the record of conviction refuted the allegations in defendant's petition, we affirm the trial court's order, concluding defendant failed to establish a prima facie case for relief under section 1172.6. For the same reason, we cannot conclude the court's order violated defendant's due process rights.

## DISPOSITION

The court's order denying defendant's petition for resentencing is affirmed.

PEÑA, J.

WE CONCUR:

HILL, P. J.

DETJEN, J.

16.